UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x

ENZO BIOCHEM, INC. et al.,  :

        Plaintiffs,  :  03-CV-3816 (RJS)

    v.  :

MOLECULAR PROBES, INC., et al.,  :

        Defendants.

---------------------------------------------------------------------- x
:
ENZO BIOCHEM, INC., et al.,
:
        Plaintiffs,  :
          03-CV-3817 (RJS)
    v.  :

PERKINELMER, INC., et al.,  :

        Defendants.
:
---------------------------------------------------------------------- x
:
ROCHE DIAGNOSTICS GMBH, et al.,
:
        Plaintiffs,  :  04-CV-4046 (RJS)
    v.  :

ENZO BIOCHEM, INC., et al.,  :

        Defendants.
:
---------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF ENZO'S
MOTION FOR RECONSIDERATION OF THE COURT'S *MARKMAN* AND
<u>SUMMARY JUDGMENT ORDERS CONCERNING U.S. PATENT NO. 5,449,767</u>**

*NY 243705234v2*

On March 12, 2014, the United States Patent and Trademark Office ("PTO") issued a final determination as to the scope and validity of the claims of U.S. Patent Nos. 5,449,767 ("the '767 patent") in which it unequivocally concluded that the claims of the '767 patent encompass ***direct detection***. In fact, the PTO even went so far as to hold that some claims are *limited* to direct detection. The PTO's decision confirms the claim construction that has been advocated by Enzo throughout these proceedings. It is also fully consistent with the claim construction that has been adopted by the District of Connecticut and applied by the Federal Circuit.

This latest claim scope determination by the PTO, however, is *directly at-odds* with Judge Sprizzo's prior *Markman* ruling limiting the '767 claims to ***indirect detection*** in the above-captioned actions. Accordingly, in light of this new intrinsic evidence, Enzo moves for reconsideration of Judge Sprizzo's July 17, 2006 Memorandum and Order (Dkt. 152, "*Markman* Order") concerning the '767 patent,[1] and to vacate the Court's corresponding September 24, 2012 Order (Dkt. 280, "Summary Judgment Order") granting summary judgment of non-infringement of the '767 patent by the directly detectable products of Molecular Probes, Inc. ("MPI"), PerkinElmer, Inc. and PerkinElmer Life Sciences, Inc. (collectively, "PerkinElmer"), and Roche Diagnostics GmbH and Roche Molecular Systems, Inc. (collectively, "Roche") (together "Defendants").

### A. The Prior *Markman* and Summary Judgment Orders

The independent claims of the '767 patent include a limitation denominated as "A," and recite that: "'A' comprises at least three carbon atoms and represents at least one component of a signaling moiety capable of producing a detectable signal." (Summary Judgment Order at 11.) In construing the '767 patent claims, Judge Sprizzo "rejected [Enzo's] argument that 'A' could be the sole component of

---

[1] Unless otherwise noted, all references to docket entries are to the docket in *Enzo Biochem, Inc. v. Amersham PLC*, No. 02 Civ. 8448, which contains the most complete record in the related cases filed by Enzo in this Court. All exhibits referenced herein are attached to the Declaration of Justin A. MacLean in Support of Enzo's Motion for Reconsideration, submitted concurrently herewith.

NY 243705234v2

the signaling moiety and operate alone as a directly detectable signal," and instead ruled that the claimed "A" moiety is "one component of a multi-component signaling moiety capable of indirect detection via an attached polypeptide." (*Markman* Order at 9-10 and 23; Summary Judgment Order at 3, 10-12.)  Judge Sprizzo applied this unduly narrow scope and meaning to the '767 claims, despite a contrary and broader construction by Judge Arterton in the District of Connecticut which allowed for "A" to be indirectly *or* directly detectable. *See Enzo Biochem, Inc. v. Applera Corp.*, 2006 WL 2927500, at *3-4 (D. Conn. Oct. 12, 2006).[2]  Years later, your Honor adopted Judge Sprizzo's construction of the "A" limitation *in toto* and granted summary judgment of non-infringement under the '767 with respect to all of Defendants' directly detectable products.  (Dkt. 248; Summary Judgment Order at 3 and 10-12.)

At the time of this Court's *Markman* and Summary Judgment Orders, however, the PTO's final determination as to the scope of the '767 patent during the recently concluded reexamination proceedings was not available.

**B. The PTO's Determination that "A" Can Be Directly Detectable**

In addition to being the subject of patent infringement claims in the above-captioned actions and the District of Connecticut, the '767 patent was also the subject of three reexamination proceedings before the PTO that were brought by Life Technologies Corporation (the successor-in-interest to both Defendant MPI and Applera Corporation, the original defendant in Connecticut). These separately-filed reexamination proceedings sought to invalidate the claims of the '767 patent based on essentially the same prior art and arguments that the defendants have asserted in Connecticut and the

---

[2] Judge Sprizzo did not have the benefit of a subsequent decision by the Federal Circuit applying Judge Arterton's construction which reads in full: "'A' comprises at least three carbon atoms and is one or more parts of a signaling moiety, which includes, in some instances, the whole signaling moiety" and was not limited to "indirect detection." *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1330 (Fed. Cir. 2010). Last year, a Connecticut jury returned a verdict in favor of Enzo under that claim construction, finding the '767 patent to be infringed and valid and awarding Enzo upwards of $60 million. An appeal of that judgment to the Federal Circuit was recently filed prior to the PTO Ruling.

proceedings in this District.  The PTO merged all three reexaminations, and then, on March 12, 2014, issued a final determination ("PTO Ruling") confirming the patentability of the claims of the '767 patent. (Ex. 1.) Among several reasons for its ruling, the PTO found that certain dependent claims (67, 68 and 70) are "limited to *direct detection*" and, therefore, not anticipated by the "Bauman" prior art reference, which only discloses *indirectly detectable* polynucleotides. (*Id.* at 3.)

As a matter of patent law, this PTO Ruling means not only that those particular claims are *limited* to direct detection, but that other claims of the '767 patent must also encompass direct detection. Indeed, claims 67, 68 and 70 of the '767 are what are known as "dependent" claims, i.e., claims which depend from, and thereby add a "further limitation of the subject matter claimed" in the patent's other broader "independent" claims. *See* 35 U.S.C. § 112(d); *Intamin Ltd. v. Magnetar Techs. Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007) ("An independent claim impliedly embraces more subject matter than its narrower dependent claim"); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1242 (Fed. Cir. 2003) ("[D]ependent claims are presumed to be of narrower scope than the independent claims from which they depend."); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("a claim term [such as the "A" limitation] should be construed consistently with its appearance in … other claims of the same patent"). Thus, the other claims of the '767 patent which contain the "A" limitation, while not necessarily so limited, must necessarily encompass direct detection.[3]

### C. The PTO Ruling Warrants Reconsideration of Judge Sprizzo's Construction

Enzo is mindful that the Court previously saw "no reason to revisit" Judge Sprizzo's claim construction (Summary Judgment Order at 3), but respectfully submits that this recent PTO Ruling

---

[3] Each of claims 67, 68 and 70 depend from independent claims in which "A" comprises "at least three carbon atoms and represents at least one component of a signaling moiety capable of producing a detectable signal." (*See* Ex. 2.)  Thus, as a matter of claim construction law, "A" must necessarily encompass direct detection in all claims of the '767 patent that contain that limitation. And, the PTO Ruling and construction should also apply to the identical "A" language of the claims of related U.S. Patent No. 5,328,824 (Ex. 3) asserted against Defendants in these actions. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).

3

warrants reconsideration and relief from his *Markman* Order. A non-final order may be revisited at any time in the Court's equitable discretion. *See S.E.C. v. Amerindo Inv. Advisors, Inc.*, 2014 WL 405339, at *3 (S.D.N.Y. Feb. 3, 2014) (Sullivan, J.). In this regard, the law is clear that claim construction "can be modified at any time up until a jury's verdict is rendered." *Integrated Liner Techs., Inc. v. Specialty Silicone Prods., Inc.*, 2012 WL 5389778, at *9 n.13 (N.D.N.Y. Nov. 2, 2012); *see also Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (approving a court's ability to "revisit[] and alter[] its interpretation of the claim terms as its understanding of the technology evolves"); *RemoteMDx, Inc. v. Satellite Tracking of People, LLC*, 2009 WL 1605292, at *1 (S.D. Cal. Apr. 29, 2009) (prior *Markman* order vacated after "carefully scrutiniz[ing] all submissions by the parties" and "concluding that a different construction is appropriate); *U.S. Philips Corp. v. Iwasaki Elec. Ltd.*, 2006 WL 2792693, at *8 (S.D.N.Y. Sept. 28, 2006) ("further claim construction was not foreclosed at anytime during the pretrial stage" and "the court was not locked into a position merely because it had conducted a *Markman* hearing and had ruled.") Under the circumstances at-bar, reconsideration is warranted where "there is a strong likelihood that the district court's decision would ultimately be reversed on appeal," based on "new evidence[.]" *Amerindo*, 2014 WL 405339, at *3.

### 1.     The PTO Ruling is New Intrinsic Evidence Which Should be Considered

It is undeniable that the PTO Ruling is new evidence which was not available to the Court in connection with the prior *Markman* or Summary Judgment Orders. Since the entirety of the reexamination proceedings, including the PTO Ruling, is part of the '767 patent's prosecution history, it is "intrinsic" evidence that should be considered and given significant weight in construing the relevant claim language. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ("To construe claim language, the court should also consider the patent's prosecution history, if it is in evidence."); *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 F. App'x 270, 276 (Fed. Cir. 2011) ("Because an examiner in a reexamination can be

considered one of ordinary skill in the art, his construction of the asserted claims carries significant weight.")

### 2. The Claim Constructions Applied by the PTO, the Federal Circuit, and the District of Connecticut are Indicative of a Strong Likelihood of Reversal

The PTO Ruling that the claims of the '767 patent cover direct detection (and in some instances are even limited to direct detection) is squarely at-odds with Judge Sprizzo's construction that the claims do not cover direct detection but are limited to indirect detection only.  Thus, standing alone, the PTO Ruling shows a strong likelihood that the Judge Sprizzo's *Markman* decision will ultimately be reversed by the Federal Circuit. That likelihood becomes even stronger when coupled with the claim construction decision of Judge Arterton in Connecticut, which fully comports with the PTO Ruling, as well as the Federal Circuit's implicit adoption and application thereof in the prior appeal.[4] Enzo respectfully submits that the Federal Circuit is not likely to reverse itself and the PTO's Ruling as to the construction of the '767 patent claims, and that the substantial questions as to the viability of Judge Sprizzo's construction at the very least warrant its reconsideration.  *Amerindo*, 2014 WL 405339, at *3.

---

[4] While the Federal Circuit may not have been presented with a dispute over construction of the "A" limitation in the prior appeal, claim construction is a necessary part of any prior art invalidity analysis. *See, e.g., Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) ("The first step in any invalidity analysis is claim construction...."). Thus, because resolution of the claim construction issue "was a necessary predicate" to the Federal Circuit's ruling on anticipation, Enzo respectfully continues to urge that Judge Arterton's construction is a matter of *stare decisis* that is binding on all parties to these actions. *Miken Composites, L.L.C. v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1338 n.* (Fed. Cir. 2008); *see also Lighting Ballast v. Phillips Elec.*, --- F.3d ----, 2014 WL 667499, at *10 (Fed. Cir. Feb. 21, 2014) ("[c]laim construction is the interpretation of a legal document that establishes a property right that applies throughout the nation.").

### D. Reconsideration at This Stage Would Promote Judicial Economy and Resolution of the Pending Suits

Reconsideration is especially warranted under the circumstances where the parties and the Court face a great risk of needlessly wasting substantial resources and time in the impending trials in the *PerkinElmer*, *Roche* and *MPI* lawsuits, all of which will need to be redone if Judge Sprizzo's construction is reversed on appeal. This issue potentially impacts not only the costly trials of the patent infringement claims, but also the breach of contract claims against PerkinElmer and Roche based on their counsel's argument that there must be a finding of infringement in order for Products to be "covered by" the respective Agreements. In fact, several of the parties' pretrial motions – including PerkinElmer's *Daubert* motion to exclude testimony from Enzo's technical expert and Enzo's Motion *in Limine* No. 1 respecting the dispute over whether the parties intended the contract term "covered by" to mean "infringe" – would be mooted if Judge Sprizzo's construction is reversed.[5]  Perhaps even more importantly, the differing claim constructions in this Court and the District of Connecticut present a serious impediment to settlement of the parties' disputes outside of multiple trials.  Thus, Enzo respectfully requests that judicial economy will be promoted by reconsideration of Judge Sprizzo's construction now – rather than after going through the costly trials of multiple actions and having those cases sent back to be re-tried following Federal Circuit appeal(s).

### E. Conclusion

For the foregoing reasons, Enzo respectfully requests that the Court reconsider Judge Sprizzo's *Markman* Order, and adopt a construction permitting the "A" moiety to be either directly *or* indirectly detectable. Moreover, because the Court's Summary Judgment Order as to infringement of the '767

---

[5] In other words, to the extent your Honor reconsiders and decides to modify Judge Sprizzo's construction to be consistent with the PTO Ruling (and the *Applera* decisions), these motions *in limine* would be mooted because, for example, the "directly detectable" products listed in the PerkinElmer agreement would infringe the '767 patent in any case. As such, Enzo respectfully submits that the Court's Summary Judgment Order should be vacated as to the '767 patent and these cases should proceed with all issues properly joined for one and only one trial each.

patent by directly detectable products was based on Judge Sprizzo's construction, Enzo further requests that the Summary Judgment Order be vacated as to those products.

Dated: New York, New York
April 8, 2014

/s/Jeffrey R. Mann
Michael Burrows
Jeffrey R. Mann
Ronald D. Lefton
Richard C. Pettus
GREENBERG TAURIG, LLP
200 Park Avenue
New York, NY 10166
(212) 801-9200

*Attorneys for Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc.*